## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| STATE OF TEXAS, CARMEN ROBLES FROST, *Plaintiffs*, v. XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; RACHEL LEVINE, in his official capacity as Assistant Secretary for Health; JESSICA SWAFFORD MARCELLA, in her official capacity as Deputy Assistant Secretary for Office of Population Affairs; OFFICE OF THE ASSISTANT SECRETARY FOR HEALTH; UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; UNITED STATES OF AMERICA, *Defendants*. | No. _____ |

---

### COMPLAINT

---

1.      This Court and the Fifth Circuit have already held that the Title X program must comply with Texas laws that require parental consent before dispensing prescription contraceptives to minors, and that the Biden Administration cannot use the Title X statute to "preempt" those parental-consent laws. *See Deanda v. Becerra*, 96 F.4th 750, 761–69 (5th Cir. 2024); *Deanda v. Becerra*, 645 F. Supp. 3d 600 (N.D. Tex. 2022). Undeterred, the Biden Administration has issued a rule requiring entities receiving Title X funding to dispense contraceptives to minors without parental consent, in violation of Texas law. *See* 42 C.F.R. § 59.10(b) (prohibiting Title X projects from notifying a parent or guardian that their minor child is receiving prescription contraceptives or other "family planning

services."). Texas law requires otherwise. In Texas, parents must consent to their child's medical care. *See* Tex. Fam. Code § 151.001(a)(6). The Biden Administration is flouting court rulings by enforcing a regulation that mirrors an agency policy that this Court and the Fifth Circuit have rejected as unlawful. Plaintiffs respectfully request that this Court set aside 42 C.F.R. § 59.10(b) and put an end to Defendants' abuse of their authority.

## I.   PARTIES

2.      Plaintiff the State of Texas is a sovereign state. Texas sues to vindicate its sovereign interests and quasi-sovereign interests.

3.      Plaintiff Carmen Robles Frost is a resident of Amarillo, Texas.

4.      Defendant Xavier Becerra is the U.S. Secretary for Health and Human Services (HHS). Secretary Becerra is sued in his official capacity.

5.      Defendant Rachel Levine is the Assistant Secretary for Health. Assistant Secretary Levine is sued in his official capacity.

6.      Defendant Jessica Swafford Marcella is the Deputy Assistant Secretary for the Health and Human Services Office of Population Affairs. Defendant Swafford is sued in her official capacity.

7.      Defendant Office of the Assistant Secretary for Health is an agency of HHS.

8.      Defendant HHS is a cabinet-level executive branch department of the United States.

9.      Defendant United States of America is the federal government of the United States of America.

## II.   JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 5 U.S.C. §§ 702 and 703 and 28 U.S.C. §§ 1331, 1346, and § 1361.

11.     This Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, and 2202.

12.     Venue is proper in this District under 28 U.S.C. § 1391.

### III.   LEGAL BACKGROUND

**A.  The Text of Title X**

13.     In 1970, Congress passed Title X of the Public Health Service Act, a grant program to "mak[e] comprehensive voluntary family planning services readily available to all persons desiring such services." Family Planning Services and Population Research Act of 1970, Pub. L. No. 91-572, § 2(1), 84 Stat. 1504 (1970).

14.     The Public Health Service Act authorizes HHS to "make grants and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents)." 42 U.S.C. § 300(a).

15.     Congress amended Title X in 1981 to include the current requirement that, "[t]o the extent practical," participating entities "shall encourage family participation in projects assisted under this subsection." *Id.*; *see also* Pub. L. No. 97-35, § 931(b)(1), 95 Stat. 357 (1981).

16.     The full text of section 300(a) provides:

> The Secretary is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). To the extent practical, entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection.

17.     While this statutory language establishes the minimum federal requirements for Title X projects when it comes to parental involvement, there is nothing in 42 U.S.C. § 300(a) that prevents states from going beyond the mere "encourage[ment]" of "family

participation" by requiring parental consent or notification before providing minors with contraception and family planning services. *See Deanda*, 96 F.4th at 761–69.

**B.  Texas Law**

18.    "Because a minor generally lacks legal authority to consent to their own care, our common law recognizes a parental right to consent to the medical treatment of one's minor child." *Deanda*, 645 F. Supp. 3d at 621.

19.    Texas law gives parents a statutory right to consent to their child's medical and dental care, and psychiatric, psychological, and surgical treatment. *See* Tex. Fam. Code § 151.001(6).

20.    The Texas Family Code establishes some exceptions to this rule. In certain emergency situations in which the parent cannot be contacted, a non-parent may consent to a child's medical, dental, psychological, and surgical treatment. *See* Tex. Fam. Code § 32.001. And some children may consent to their own medical, dental, psychological, and surgical treatment in certain limited situations. *See* Tex. Fam. Code § 32.003. For example, minors on active military duty may consent to their own medical, dental, psychological, and surgical treatment without parental involvement. *See* Tex. Fam. Code § 32.003(a)(1). So may emancipated minors who are over 16 years of age. *See* Tex. Fam. Code § 32.003(a)(2).

21.    Unless an exception applies, Texas law does not allow minors to access prescription contraception without parental consent. *See* Tex. Fam. Code §§ 32.001, 32.003(a)(1)–(2). And no person or entity may provide minors with prescription contraception without parental consent.

22.    Unless one of the limited exceptions applies, a Title X project that offers minors prescription contraception without first obtaining parental consent violates Texas law.

## C.  Previous Challenge to the Administration of the Title X Program

23.    In 2020, Alexander Deanda (Deanda) filed a federal lawsuit challenging HHS's administration of the Title X program, "alleg[ing] that the Secretary administers Title X unlawfully by funding grantees who provide contraceptives to minors without notifying parents or obtaining parental consent," in violation of Tex. Fam. Code § 151.001(a)(6). *Deanda*, 96 F.4th at 754–55.

24.    As a father of three minor daughters, Deanda wanted to be informed of their access to contraceptives in order to raise his children according to his Christian beliefs. *Deanda*, 96 F.4th at 754.

25.    The federal government argued that Title X preempted Texas's parental-consent laws.

26.    The Court rejected this argument and held unlawful the Secretary's "longstanding guidance," *see id.*, to Title X's grantees that they cannot require parental consent or even notify parents. *See Deanda*, 645 F. Supp. 3d at 618–19.

27.    The Fifth Circuit agreed with the district court that Title X does not preempt Texas's laws. *Deanda*, 96 F.4th at 768. The defendants did not seek certiorari.

## D.  The Non-Consent Rule

28.    After Deanda filed suit and after the parties cross-moved for summary judgment, HHS issued a new rule, 86 Fed. Reg. 56,144 (Oct. 7, 2021) (the Non-Consent Rule).

29.    The Non-Consent Rule instructs that Title X projects "may not require" parental consent or notification before administering family-planning services to minors, regardless of state law. 42 C.F.R. § 59.10(b).

30.    The Rule provides:

> To the extent practical, Title X projects shall encourage family participation. However, Title X projects *may not require consent of parents or guardians for the provision of services to minors*, nor can any Title X project staff notify a parent or guardian before or after a minor has requested and/or received Title X family planning services.

42 C.F.R. § 59.10(b) (emphasis added).

31.     The Non-Consent Rule's prohibition on parental consent is unauthorized by the statute it purports to interpret and is not entitled to deference. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

## IV.   Effect of the Non-Consent Rule on Texas

32.     Texas law requires the very type of family participation the Non-Consent Rule purports to prohibit.

33.     Texas "has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (5th Cir. 1982).

34.     And Texas has a sovereign interest in its "power to create and enforce a legal code." *Tex. Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 449 (5th Cir. 1999) (internal quotation marks omitted). Texas suffers irreparable harm when it is precluded from enforcing its own laws. *See E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021).

35.     Texas entities receive approximately $18,215,890.00 in Title X funding annually.[1]

36.     By conditioning federal funding on compliance with the Non-Consent Rule, the Non-Consent Rule purports to preempt Texas's sovereign interests in the health and safety of its residents and its traditional regulation over family law. *See Deanda*, 96 F.4th at 763. That inflicts injury in fact.

37.     Texas's injury is traceable to the Non-Consent Rule, which purports to preempt Texas laws that require parental consent before prescription contraception is dispensed to minors.

38.     And Texas's injury is likely to be redressed by the requested relief, which will "hold unlawful and set aside" 42 C.F.R. § 59.10(b) under section 706 of the APA, and which will enjoin the defendants from directly or indirectly funding any family-planning projects in

---

[1] *See Office of Population Affairs*, Fiscal Year 2022 Title X Service Grant Awards, https://bit.ly/3zNGktC.

Texas that fail to obtain parental consent before distributing family-planning services to minors, or that violate a state's parental-involvement laws in any manner.

## V.   Effect of the Non-Consent Rule on Plaintiff Frost

39.   Plaintiff Carmen Robles Frost is a mother of two daughters under the age of 18.

40.   Ms. Frost is a Christian, and she is raising her daughters in accordance with Christian teaching on matters of sexuality, which requires unmarried children to practice abstinence and refrain from sexual intercourse until marriage.

41.   Ms. Frost wishes to be informed if any of her children are accessing or attempting to access prescription contraception and other family-planning services. And she does not want her children to obtain or use these drugs or services unless she consents, in accordance with her statutory rights as a parent under section 151.001(6) of the Texas Family Code.

42.   The law of Texas protects Ms. Frost's rights as a parent—and the rights of every other parent in Texas—by prohibiting individuals or entities from distributing prescription contraception to minors without parental consent. *See* Tex. Fam. Code § 151.001(6); Tex. Fam. Code § 32.003.

43.   The defendants, however, are flouting the law of Texas by making prescription contraception (and other family-planning services) available to Ms. Frost's daughters and the children of every other parent in Texas without their knowledge or involvement.

44.   The Non-Consent Rule enables children to obtain these drugs and services without parental consent, inflicting injury in fact on Ms. Frost and every parent in the United States who wishes to be informed if their children are accessing or attempting to access prescription contraception and other family-planning services, or who wishes to prevent their children from obtaining or using these drugs or services without their consent. These injuries include, but are not limited to: (a) The loss of their statutory rights as parents under 151.001(6) of the Texas Family Code, as they no longer have the right secured by Texas law to consent before their children use or obtain prescription contraception; (b) The

subversion of their authority as parents, as their children now have the ability to use or obtain prescription contraception or other family-planning services behind their backs and without parental knowledge or permission; (c) The loss of assurance that their children will be unable to access prescription contraception or other family-planning services that facilitate sexual promiscuity and pre-marital sex; and (d) The weakening of their ability to raise their children in accordance with the teachings of the Christian faith, which prohibits pre-marital sexual activity, regardless of whether contraception or family-planning devices are used. *See Deanda*, 96 F.4th at 755–59.

45.     Each of these injuries is traceable to the Non-Consent Rule, which authorizes the distribution of prescription contraception or other family-planning services to minors without parental consent, and in violation of Texas laws that require parental consent before prescription contraception in dispensed to minors.

46.     Each of these injuries is likely to be redressed by the requested relief, which will "hold unlawful and set aside" 42 C.F.R. § 59.10(b) under section 706 of the APA, and which will enjoin the defendants from directly or indirectly funding any family-planning projects in Texas that fail to obtain parental consent before distributing family-planning services to minors, or that violate a state's parental-involvement laws in any manner.

## VI.   CLAIMS
### COUNT I
### The Non-Consent Rule Exceeds Statutory Authority
### and Is Not in Accordance with Law
### 5 U.S.C. § 706

47.     Plaintiffs incorporate by reference all preceding paragraphs.

48.     Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or in "excess of statutory . . . authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

*Original Complaint*                                                                                          8

49.     Matters of family law are traditionally reserved for the states. *See Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001).

50.     The Non-Consent Rule exceeds Defendants' authority because Title X does not preempt or authorize Defendants to preempt Texas's parental-consent laws.

51.     "[N]othing in 42 U.S.C. § 300(a) . . . purports to preempt state laws requiring parental consent or notification before distributing contraceptive drugs or devices to minors." *Deanda*, 96 F.4th at 768 (cleaned up).

52.     The Non-Consent Rule exceeds statutory authority and is not in accordance with law because 42 U.S.C. § 300(a) establishes only a *minimum* requirement for parental involvement by directing Title X projects to "encourage family participation" "to the extent practical." The statute does not prohibit Title X projects from going beyond the baseline requirements of 42 U.S.C. § 300(a) by obtaining parental consent or notifying parents before providing family planning services to minors, or by complying with state laws that require such notification or consent.

53.     The Non-Consent Rule exceeds statutory authority and is not in accordance with law because it is incompatible with Title X's text. The Non-Consent Rule forbids parental involvement despite the statutory command that Title X participants "encourage family participation" "to the extent practical." It is impossible for a Title X project to "encourage family participation" when it is categorically prohibited from involving parents in the provision of family planning services to minors. The Non-Consent Rule explicitly prohibits an entity from notifying a parent or guardian or obtaining their consent before their child receives access to Title X services.

54.     Defendants lack authority to prohibit parental involvement beyond the minimum requirements listed in the statute. And Defendants lack the statutory authority to preempt state laws.

55.    The Non-Consent Rule is not entitled to deference and this court must enforce the interpretation of 42 U.S.C. § 300(a) adopted by the Fifth Circuit in *Deanda*. *See Loper Bright Enterprises*, 144 S. Ct. at 2263.

56.    The Non-Consent Rule is contrary to law and exceeds Defendants' statutory authority and must be held unlawful and set aside.

**Count II**
**The Final Rule is Arbitrary and Capricious**
**5 U.S.C. § 706**

57.    The Non-Consent Rule is final agency action under the APA.

58.    "Normally, an agency action would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

59.    An agency action is arbitrary and capricious if it fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. Under the APA, a court must "hold unlawful" and set aside agency action that is "arbitrary and capricious." 5 U.S.C. § 706(2)(A).

60.    Defendants did not engage in reasoned decision-making, but instead acted arbitrarily and capriciously in issuing the Non-Consent Rule.

61.    Defendants failed to explain how the Non-Consent Rule interacts with any specific state laws which have parental notification and consent requirements. This does not satisfy Defendants' obligation to "adequately assess reliance interests" or "reasonably consider[] the relevant issues and reasonably explain[] the decision." *Texas v. Biden*, 10 F.4th 538, 552, 555 (5th Cir. 2021).

62.     The Non-Consent Rule is arbitrary and capricious and must be held unlawful and set aside.

## VII.   Declaratory judgment

63.     The federal Declaratory Judgment Act authorizes federal courts to declare the rights of any interested party seeking a declaration. 28 U.S.C § 2201(a). The issuance of a declaratory judgment can serve as the basis for an injunction to give effect to the declaratory relief. *Steffel v. Thompson*, 415 U.S. 452, 461 n.11 (1974).

64.     For the reasons described above, Plaintiffs are entitled to a declaration that Texas has a right to enforce its parental-consent laws against Title X participants and that the Non-Consent Rule is unlawful and unenforceable.

## VIII.   Demand for Relief

For these reasons, Plaintiffs respectfully request that the Court:

i.      Hold unlawful and set aside the Non-Consent Rule under 5 U.S.C. § 706;

ii.     Declare that Texas has a right to enforce its parental-consent laws against Title X participants, and that nothing in 42 U.S.C. § 300(a) or any other federal law preempts that right;

iii.    Issue a permanent injunction prohibiting the defendants from enforcing the Non-Consent Rule;

iv.     Issue a permanent injunction prohibiting the defendants from funding any Title X project in Texas that fails to comply with the state's parental-consent laws, or from funding any Title X project that fails to comply with the parental-consent or parental-notification laws of any other state;

v.      Award such other relief as the Court deems equitable and just.

*Original Complaint*                                                                                11

Dated: July 25, 2024

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN WALTERS**
Chief, Special Litigation Division

*/s/ Amy Snow Hilton*
**AMY SNOW HILTON**
Special Counsel
Texas Bar No. 24097834
Amy.Hilton@oag.texas.gov
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**COUNSEL FOR STATE OF TEXAS**

**JONATHAN F. MITCHELL**
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

**GENE P. HAMILTON**
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE, #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

**COUNSEL FOR CARMEN ROBLES FROST**